*Court of Common Pleas, Dauphin County, January 13th,* 1863.

SMYSER ET AL. *v.* BROOKS, EXECUTOR OF BROOKS.

No notice of the revival of mortgage need be served upon a terre-tenant. A mortgage given to secure dower should not be revived until one year after the death of the widow. An executor of an administrator is the proper party to sue on a mortgage given to secure the dower of the widow of the administrator's intestate, after her death. The court has no power to open an irregular judgment after seven years have elapsed from the time of filing it upon record.

BY THE COURT.—On the argument of the above motion, the following state of facts was established by the evidence and admissions of the counsel:

George Hoyer and Christian Kunkel were administrators of Peter Kunkel, deceased, and as such, sold lot 35, in Harrisburg, to John Brooks, on the 24th day of April, 1813, under an order of court, and took a mortgage and bond on that day to secure to Eve Kunkel, widow of Peter Kunkel, deceased, the amount of her dower out of said lot, $627.40, the interest of which was to be paid to her annually, and on her death, the principal to said George Hoyer and Christian Kunkel, administrators as aforesaid,

[Smyser et al. *v.* Brooks, Executor of Brooks.]

" for the use of the heirs of Peter Kunkel, deceased." The annual interest was paid to Eve Kunkel during life, and she died September 25, 1847.

Christian Kunkel died in 1823. George Hoyer in 1841, having by his will appointed Sarah Hoyer and Philip Smyser his executors. John Brooks died in December, 1845, having constituted D. W. C. Brooks, his executor. Philip Smyser and Sarah Hoyer, as executors of George Hoyer, who was surviving administrator of Peter Kunkel, deceased, assigned the mortgage to Simon Cameron, by writing indorsed thereon, on the 8th day of April, 1848. Releases were also given to Simon Cameron by the heirs of Peter Kunkel about the same time, recorded 16th of May, 1848, showing they were all paid in full by him for their respective shares.

C. Kunkel and George Hoyer obtained a credit for this bond or mortgage, as still outstanding, to secure the dower of Eve Kunkel, in their administrator's account, on the estate of Peter Kunkel, deceased, settled 27th October, 1813.

D. W. C. Brooks, by deed dated January 1st, 1846, conveyed all his interest in his father's real estate to his three sisters, Elizabeth, Mary, and Julia Brooks, which was recorded May 17th, 1852. Some time between 1855 and 1860, D. W. C. Brooks died, and on the 26th November, 1860, letters of administration cum tes. an. de bonis non were issued to Mary Brooks on the estate of John Brooks, deceased. To January Term, 1861, a scire facias issued on this mortgage, in the name of Simon Cameron *v.* Mary Brooks, administratrix de b. n. cum test. annexo of John Brooks, deceased, on which the plaintiff suffered a nonsuit on the 8th of May, 1862. An alias sci. fa. since issued to revive the original judgment, No. 27, to August Term, 1862.

Several points have been made by defendant's attorney, as the foundation of this motion.

*First.* The executor of John Brooks had no right to accept service of the writ; the terre-tenants should have been made parties, or at least served with notice.

*Second.* The writ of scire facias issued prematurely on the mortgage. Eve Kunkel had not been dead a year.

*Third.* There were no legal parties plaintiffs to the suit. Letters of administration should have been taken out on the estate of Peter Kunkel, and the mortgage sued in the name of such administrator.

*Fourth.* The court should open the original judgment, as the terre-tenants were not notified, and let them into a defence.

1. By the express terms of the 6th section of the act of 1705, it is provided that the scire facias shall be issued against the mortgagor, his heirs, executors, or administrators. There can be no doubt, therefore, that the executor was a proper party defendant. It is equally clear that no notice need be served on the

terre-tenants, no law requires it in proceedings on mortgages (1 W. 491; 4 Barr, 80), but they will not be concluded by the judgment if not served; can make their defence in an ejectment for the premises. It is therefore safest for the mortgagee to make them parties, but a failure so to do is no irregularity.

The 34th section of the act of 24th February, 1834, does not require the service of such a writ upon the heirs of a decedent. That section applies to original actions only. It has no application to a scire facias upon a mortgage (2 Wharton, 365; Chambers *v.* Carson, 1 Miles, 268). It does not even apply to the revival of a judgment which was a lien in the lifetime of the decedent (4 W. and S. 237; McMillan *v.* Reed).

2. There is little doubt but that the scire facias issued prematurely. It should have been delayed until one year after the death of Eve Kunkel, but it is questionable whether this defect should not have been pleaded in abatement (9 Barr, 33, 36). It is very true that a vendor of land, subject to a prior mortgage, cannot waive the time after a sale to prejudice of his vendee (1 T. and H., Penna. Prac. 570, in note). But that principle probably does not apply to the action of an executor, to whom the testator and the law has intrusted the management of the estate, and whose duty it was to see that all things were conducted for its benefit. It may be that by an arrangement for a delay of execution, he gained more than an equal advantage for the heirs. Even if an irregularity, it is probably cured by the lapse of time, more than seven years having intervened since the judgment, and if the proceeding is void, the terre-tenants can take advantage of it on the scire facias. A void judgment will not stand in the way of their defence. We will speak more fully of the effect of this hereafter.

3. If the claim due on this mortgage comes within the 31st section of the act of 24th of February, 1834, it is very clear that the parties named on the original judgment are not the proper persons to sue. We are of the opinion that the section referred to was intended to cover the ordinary personal estate only, and not a mortgage given for a debt solely concerning the real property. This is not " money due and belonging to the estate of the decedent," but to the *heirs* of the intestate after the death of Eve Kunkel. There is no doubt but that moneys which are outstanding belonging to such an estate must ordinarily be recovered in the name of an administrator *de bonis non,* and not by the legal representatives of the deceased administrator; such is the settled construction of that statute (9 W. 479, 485; 7 Barr, 320, 321; 6 Harris, 313; 7 Harris, 201). The mortgage in question is given to Christian Kunkel and George Hoyer, administrators of Peter Kunkel, " for the use of the *heirs* of Peter Kunkel," after the death of his widow, whose dower it was also intended to secure;

G. Hoyer and C. Kunkel, calling themselves administrators, would, prior to the passage of that act, be considered surplusage. It is otherwise since in regard to all that portion of the estate which must come into a course of administration, as vendue notes for personal property, or the like. This debt is differently situated. True, it is a surplus due from a sale of the real estate of the decedent, but it is the amount left after paying all the debts of the decedent, and remained in the lot, in order to secure the widow's dower during her lifetime, and the residue was to be paid over to the *heirs*. It was their money as fully as if they had been severally named, and the administrators had nothing to do with the fund except as naked trustees. On the death of Eve Kunkel, each heir could have gone to the mortgagor, and received his purpart, and his receipt or release would have been good without the action of the administrators. Our law regards the interest of the *cestui que trust*, not that of the trustee, especially of a naked one without interest. It has been decided, as already shown, that the 34th section of this act does not embrace the case of a mortgage, and we can see no reason for applying the provisions of the 31st section to that kind of instrument, especially in a case like the present, where the mortgages appear to have been given on the winding up of the whole business. It certainly cannot be necessary to take out letters of administration *de bonis non* to collect a debt of this character, when not one penny of the money would be coming to the estate of the decedent, but to the heirs alone in their own right. It might be supposed that such letters must issue in order to raise legal parties to a suit, and such would unquestionably be the case in regard to a bond or judgment, but it is otherwise as to a mortgage. If this instrument had been taken by Peter Kunkel in his lifetime, the scire facias would have been issued in the name of his "*heirs*," by the express words of the 6th section of the act of 1705, which gives the writ to the party mortgagee, "his heirs, executors, administrators, or assigns." If the fund is required for the payment of debts, it will be recovered for the use of the executors or administrators. As this mortgage was taken after the death of the intestate, on a sale of his land by the administrators, it is for all legal purposes treated as their own proper debt, for which they would have to account to creditors, if any, or to the heirs, if none. Such was the case in all sales of goods prior to the act of 1834, and naming themselves administrators were treated as surplusage, and a mere description of the person (8 S. & R. 402; 2 Penna. 491); and since that act, where they sold land to pay a widow's dower, it was held that it became their own proper debt, and the charge against them was not lost by lapse of time (2 Barr, 422). Whilst, then, we concede the general principle as applicable to the personal estate, that if a promise be made to an administrator for the use of an estate, it

must now be sued by an administrator *de bonis non*. on the death of the promisee, we do not consider it applicable to a proceeding on a mortgage given for the use of the heirs, although in the name of the administrators, and that they stand as the legal parties during life, and the executor, administrator, or even heir-at-law of the survivor can proceed by scire facias after their death precisely as they would have done before the act of 1834. It might possibly be otherwise on the bond accompanying the mortgage. That, perhaps, must be pursued under the act of Assembly, but the whole law is different as to mortgages.

I am inclined to the belief that the parties to this suit are strictly correct, but if there is any serious doubt, it is that Simon Cameron should have sued in his *own name* as *legal assignee* of the mortgage. This is a point not raised on the argument, and possibly, as the assignment was not made by the mortgagees, but by the executors of the survivor, it passed but an equity. If so, it is properly sued. But supposing the proceeding to be erroneous, either in this or the second item referred to, is it void? If it is, the present defendant, Mary Brooks, can take advantage of the error in the scire facias, as fully as if the judgment were stricken off. A void judgment cannot be revived. There is then neither advantage nor necessity in exercising such doubtful powers. If the judgment entered is only irregular, the next question is, how far is it cured by lapse of time? By the 20th section of the act of the 18th of April, 1791, it is provided, *inter alia,* that no judgment shall be avoided or reversed for any defect or error therein unless the writ of error be commenced within seven years after such judgment was signed or entered of record. More than double that time had elapsed before this motion was made. It will scarcely be pretended that a Court of Common Pleas could strike a judgment off its records, which the Supreme Court could not lawfully reverse on a writ of error. We unquestionably possess very extensive powers to *open* judgments obtained and kept on foot by fraud or circumvention, but that is a very different matter. Many cases decide that we cannot lawfully strike off judgments after a great lapse of time. In very few instances can we lawfully do it at all. No legal ground has been laid to open the judgment in the present case. No merits are shown; no payments proved not already credited, and if any were made, it can be proved on the scire facias. There is no pretence that full value was not paid by the present claimant, and to the proper persons, the heirs of Peter Kunkel; they present no claim, and all the objections are purely technical, without merits, and the only matter complained of is, that the executors of John Brooks did not pay over the money which his testator intended should be applied to the discharge of this debt—committed a breach of trust.

4. It is unnecessary to open the judgment for the purpose of

[Unger v. Unger.]

protecting the rights of the terre-tenants, as it is well settled that they can now make every meritorious defence which they could have made to the original judgment.  Possibly not those of a mere technical character, which should have been pleaded in abatement by the executor, the legal party defendant to the action, but every one of which they, as terre-tenants, could have taken advantage, showing or tending to show that their property is not properly subject to, or bound to pay the mortgage.

The motion to strike off the judgment and set aside the proceeding is overruled and rejected, as also the oral application to open the original judgment.

AFFIRMED BY THE SUPREME COURT (12 Wr. 86).

*Lamberton and Fisher, for plaintiff.*

*Hubbell and Alricks, for defendant.*